IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

HANCOCK FABRICS, INC.                                                              PLAINTIFF

V.                                                                   CAUSE NO.: 1:12CV131-SA-DAS

ROWDEC, LLC d/b/a WESTLAKE ASSOCIATES                          DEFENDANT

MEMORANDUM OPINION

Hancock Fabrics, Inc. ("Hancock") filed this Complaint and Application to Vacate and/or Modify Arbitration Award in the Lee County Circuit Court originally. The case was eventually removed to this Court, and Rowdec, LLC d/b/a Westlake Associates ("Westlake") filed a Motion to Dismiss or, Alternatively, Transfer Venue [8] on the basis that this Court lacked personal jurisdiction over that entity, or alternatively, that the Northern District of Texas, Dallas Division was a more proper or more convenient forum. Westlake also requested that this Court dismiss Hancock's state law claim based on vacation of the arbitration award. Because the Court finds jurisdiction over Westlake and the forum chosen by the Plaintiff to be proper, the Court denies Westlake's motion. However, because the state law claims are duplicates of a federal law claim and the underlying contract did not specify Mississippi law to apply, the Court dismisses Plaintiff's claim based on Mississippi Code Section 11-15-23.

*Factual and Procedural History*

Hancock and Westlake entered into a Consulting and Sales Agreement in February of 2009 in which Westlake would consult with and advise Hancock on implementing a craft department in its stores. In return, Westlake was to receive a guaranteed sum for the first two years with a royalty to be paid on all items sold in the craft department for the six year term of the contract.

In 2011, after acknowledging that the parties' unsuccessful efforts to resolve their differences over the list of "Identified Products" from which Westlake's royalties were to be calculated under the agreement, Westlake invoked the Dispute Resolution Procedures under the Agreement. Those procedures provide for initial consultations between the senior executives of each entity in order to resolve the issue. The "dispute, disagreement, claim or controversy between the parties arising under or relating to this Agreement or the parties' performance thereunder" defined the contractual term "Disputed Matter." If the issue cannot be resolved by those consultations, the contract states that "either party may apply for binding and confidential arbitration of the Disputed Matter with the American Arbitration Association. . . . A single arbitrator shall be appointed by the agreement between the parties or, failing such agreement, by AAA. The arbitration shall be held in Dallas, Texas."

In August of 2011, after failed consultations, Westlake applied for binding arbitration to determine whether Hancock breached the Consulting and Sales Agreement by failing to pay royalties on the identified products. The arbitration was conducted over four days, February 6-9, 2012, in Dallas, Texas. The arbitrator issued the award on March 22, 2012, and granted Westlake's declaratory judgment against Hancock. In addition to damages, the arbitrator additionally awarded $519,328.60 to Westlake for it "reasonable and necessary attorney's fees," costs of $4,019.15, and administrative fees and expenses of the American Arbitration Association totaling $25,485.22.

Within two hours of the issuing of this Award, Hancock filed the instant case in the Lee County Circuit Court. Hancock insists that the arbitrator exceeded his powers under Mississippi and Federal statutes by awarding attorneys' fees, and future payments based on litigation necessary to confirm the arbitrator's award.

Westlake then filed a Confirmation of Arbitration action in the Northern District of Texas, Dallas Division. Hancock, a defendant in the Texas action, filed a Motion to Dismiss or Transfer Plaintiff's Petition to Confirm Arbitration Award, which the Texas court granted. Pursuant to the "first to file" rule, the Northern District of Texas transferred the Westlake Petition to Confirm the Arbitration Award to the Northern District of Mississippi. See Rowdec, LLC v. Hancock Fabrics, Inc., Cause Number 1:12cv222 (N.D. Miss. Oct. 18, 2012). The district court determined that the "Northern District of Mississippi is the correct forum to decide which venue is appropriate . . . ."

Westlake now contends the Northern District of Mississippi is not the correct forum for this action, or alternatively, that the Court should dismiss this action as the Court lacks personal jurisdiction over Westlake.

*Discussion and Analysis*

1. <u>Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)</u>

In determining if personal jurisdiction exists, the Court engages in a familiar two-part inquiry. Paz v. Brush Engineered Materials, Inc., 445 F.3d 809, 812 (5th Cir. 2006). First, the Court must determine whether jurisdiction is proper under Mississippi's long-arm statute and second, whether jurisdiction complies with the requirements of due process. Id.; Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997). Courts generally examine the long-arm statute first. See Cycles, Ltd. v. W.J. Digby, Inc., 889 F.2d 612, 616 (5th Cir. 1989).

Where the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie case that jurisdiction is proper. Quick Techs., Inc. v. Sage Group, PLC, 313 F.3d 338, 343 (5th Cir. 2002). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining

3

whether a prima facie case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion, including affidavits . . . ." Paz, 445 F.3d at 812. In addition, the Court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation." Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000). Thus, the Court accepts Hancock's factual assertions where dispute exists along with Westlake's record evidence when undisputed.

   a. *Long-Arm Statute*

Three avenues exist for jurisdiction under Mississippi Code Section 13-3-57—the "tort" prong, the "contract" prong, or the "doing-business" prong. Hancock contends that this Court has jurisdiction over Westlake under the "contract" or "doing business" prongs. Westlake does not contend that jurisdiction is improper under the Mississippi Long Arm Statute. After reviewing the contract and the parties' pleadings, the Court is convinced that the Mississippi Long Arm Statute conveys jurisdiction over Westlake. See ITL Int'l, Inc. v. Constenla, S.A., 669 F.3d 493, 498 (5th Cir. 2012) (holding that "doing-business" prong is met if defendant performs "any character of work in this state") (citation omitted). Nevertheless, Hancock must still establish that the exercise of personal jurisdiction over Westlake comports with due process.

   b. *Constitutional Due Process*

The due process inquiry consists of two considerations: (1) the nonresident defendant must have some minimum contact with the forum resulting from its own affirmative act, and (2) maintenance of the suit must comport with "traditional notions of fair play and substantial justice." Stuart v. Spademan, 772 F.2d 1185, 1190-91 (5th Cir. 1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

Under the first prong of the due process analysis—the minimum contacts test—personal jurisdiction may be general or specific. Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006). General jurisdiction requires that the defendant's purposeful contacts with the forum state be "substantial" and "continuous and systematic." ITL Int'l, Inc., 669 F.3d at 498-99; Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008). As the Court of Appeals for the Fifth Circuit noted in Johnston:

> The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Submersible Sys., Inc. v. Perforadora Cent., S.A., 249 F.3d 413, 419 (5th Cir. 2001) (citation omitted). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . ." Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002) (citations omitted). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007) [citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)].

Johnston, 523 F.3d at 609-10.

The undisputed facts in this case fail to reflect a basis for this Court to exercise general jurisdiction over Westlake. Westlake does not have any corporate offices in Mississippi and does not currently conduct business in Mississippi. Nor does Westlake have any clients in Mississippi or maintain any registered agent for service of process in Mississippi. Westlake does not own, possess, or rent any real property in Mississippi. Westlake does not have any bank accounts, brokerage accounts, savings and loan accounts, cash or securities accounts, or any other personal property in Mississippi. Furthermore, Westlake does not have any employees, servants, or agents in Mississippi. Westlake does not maintain a website through which business could be conducted in Mississippi.

Hancock spends little time addressing these facts or the general jurisdiction issue. Indeed, that party contends that "Mississippi jurisdiction satisfies Due Process because Westlake has minimum contacts with this state, the claims arise out of those contacts, and jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" Accordingly, the Court concludes that Westlake's contacts with Mississippi were neither "substantial" nor "continuous and systematic" such that general jurisdiction over that entity is proper. See Johnston, 523 F.3d at 614 (finding no general jurisdiction over company that sold products to Texas where "neither the total amount of sales nor the percentage of annual sales is substantial or regular enough to create a general presence in Texas").

In contrast to general jurisdiction, specific jurisdiction may exist "where there are only isolated or sporadic contacts, so long as the plaintiff's claim relates to or arises out of those contacts." ITL Int'l, Inc., 669 F.3d at 498-99. For the Court to have specific jurisdiction over Westlake, "due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." Id. Due process first requires

> that a defendant have sufficient contacts with the forum state such that it "should reasonably anticipate being haled into court there." This requirement can be satisfied by a showing that the defendant "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there." The defendant's contacts must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."

Id. (citing Burger King, 471 U.S. at 474, 105 S. Ct. 2174); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009); Nuovo Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 378

(5th Cir. 2002)). Moreover, the defendant's contact with the forum state must rest on more than the "mere fortuity that the plaintiff happens to be a resident of the forum." Patterson v. Dietze, Inc., 764 F.2d 1145, 1147 (5th Cir. 1985). Thus, "[a] single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts." Moncrief Oil Int'l Inc., 481 F.3d at 311 (citations omitted).

Hancock avers that Westlake has sufficient contacts with Mississippi based on the contract entered into between Westlake and Hancock, that there exists a nexus between Westlake's contacts and Hancock's claims, and the exercise of jurisdiction over Westlake is fair and reasonable. Hancock notes that prior to entering into the Consulting and Sales Agreement, Westlake representatives traveled to Hancock's headquarters in Baldwyn, Mississippi to make a presentation in support of that consulting agreement. After the contract was signed, Hancock notes that Westlake representatives traveled "repeatedly" to Mississippi to perform work under the agreement between 2009 and 2011. Further, Hancock affirms that Westlake representatives traveled to the Baldwyn, Mississippi headquarters as many as ten times to oversee and perform work at the facility and made an on-site visit to a local Hancock retail store to conduct a walk-through for research and planning purposes. During the dispute process, in October of 2010, Westlake representatives again traveled to Mississippi for an in-person meeting with Hancock executives to attempt to resolve the dispute. Finally, in response to the arbitrator's award, Westlake traveled to the Hancock headquarters in May of 2012, for the purpose of inspecting Hancock's records and reports in connection with royalty payments due under the arbitration award. Accordingly, all contacts with the State of Mississippi were in reference to the underlying contract entered into between Hancock and Westlake.

7

The Court notes that Hancock's claims under this amended complaint are that the arbitrator exceeded the scope and authority conferred upon him by the parties. The document evidencing the parties' agreement as to the arbitration that is at issue is the Consulting and Sales Agreement. Indeed, the court may vacate an arbitration award under Section 10 of the Federal Arbitration Act if the award exceeds the scope of the arbitrator's powers. 9 U.S.C. § 10(a)(4); Valentine Sugars Inc. v. Donau Corp., 981 F.2d 210, 213 (5th Cir. 1993). Because the arbitrator's authority springs from the arbitration agreement, the court must look at the terms of the agreement to determine the authority conferred upon the arbitration panel. Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649, 651 (5th Cir. 1979) (citing United Steel Workers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960), and Gulf and South America Steamship Co., Inc. v. National Maritime Union of America, 360 F.2d 63, 65 (5th Cir. 1966)). All of Westlake's contacts in this district are due to that underlying contract. Because the Court finds that the terms of the underlying contract are in dispute in this matter, Westlake's contacts with the State of Mississippi, and in particular, this district of the State, confer jurisdiction in this court that complies with traditional notions of fair play and substantial justice. In sum, this Court can constitutionally exercise specific personal jurisdiction over Westlake.

2. Venue

Venue is determined at the outset of litigation and is not affected by subsequent events. Smilde v. Snow, 73 F. App'x 24, 26 (5th Cir. 2003) (citing Mich. Trust Co. v. Ferry, 228 U.S. 346, 353, 33 S. Ct. 550, 57 L. Ed. 867 (1913); Exxon Corp. v. FTC, 588 F.2d 895, 899 (3d Cir. 1978)). Westlake does not appear to contest that the filing of the instant action was appropriate in the Northern District of Mississippi under the general venue statute, 28 U.S.C. Section 1391.

However, Westlake does contend that venue is more proper in the Northern District of Texas, Dallas Division under two theories: (1) Section 1406, and (2) Section 1404.

The federal statute concerning improper venue provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. Having determined that venue is proper in the Northern District of Mississippi, the Court examines whether transfer to the Northern District of Texas, Dallas Division, would be proper based on the federal venue transfer statute, 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); see also Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964); In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I"). A district court has "broad discretion in deciding whether to order a transfer." Balawajder v. Scott, 160 F.3d 1066, 1067 (5th Cir. 1999). The movant must show that "the transferee venue is . . . clearly more convenient." In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("Volkswagen II"). See Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966) (stating that the "plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed"). The burden is on Defendant to demonstrate that the forum of its choice – the Northern District of Texas – is significantly more convenient. Apache Prods. Co. v. Employers Ins. of Wausau, 154 F.R.D. 650, 653 (S.D. Miss. 1994) (citing Sorrels Steel Co., Inc. v. Great Southwest Corp., 651 F. Supp. 623 (S.D. Miss. 1986)). In applying this statute, the United States Court of Appeals for the Fifth Circuit has held that the party seeking to

9

transfer venue "must show good cause." Volkswagen II, 545 F.3d at 315 (quoting Humble Oil & Ref. Co. v. Bell Marine Serv., Inc., 321 F.2d 53, 56 (5th Cir. 1963)). The "good cause" burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled. When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer. Id.

When considering whether to transfer a case pursuant to Section 1404(a), the Fifth Circuit has "suggested ... that the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." Volkswagen I, 371 F.3d at 203. Having reviewed the pleadings, the Court finds Hancock's claims against Westlake could have been filed in the Northern District of Texas because that is the District in which the arbitration took place, and is the District in which the arbitrator allegedly exceeded his scope of authority. See 28 U.S.C. § 1391(b)(2) (providing, in relevant part, that "[a] civil action may be brought in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ."). For these reasons, the Court finds Hancock's claims against Westlake could have been filed in the United States District Court for the Northern District of Texas, the proposed transferee venue.

Having determined that Hancock's claims against Westlake could have been filed in the United States District Court for the Northern District of Texas, the Court now considers whether

transfer venue "must show good cause." Volkswagen II, 545 F.3d at 315 (quoting Humble Oil & Ref. Co. v. Bell Marine Serv., Inc., 321 F.2d 53, 56 (5th Cir. 1963)). The "good cause" burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled. When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer. Id.

When considering whether to transfer a case pursuant to Section 1404(a), the Fifth Circuit has "suggested ... that the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." Volkswagen I, 371 F.3d at 203. Having reviewed the pleadings, the Court finds Hancock's claims against Westlake could have been filed in the Northern District of Texas because that is the District in which the arbitration took place, and is the District in which the arbitrator allegedly exceeded his scope of authority. See 28 U.S.C. § 1391(b)(2) (providing, in relevant part, that "[a] civil action may be brought in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ."). For these reasons, the Court finds Hancock's claims against Westlake could have been filed in the United States District Court for the Northern District of Texas, the proposed transferee venue.

Having determined that Hancock's claims against Westlake could have been filed in the United States District Court for the Northern District of Texas, the Court now considers whether

the lawsuit should be transferred to that venue under 28 U.S.C. Section 1404(a). Under this statute, the Court is required to consider two issues: "the convenience of parties and witnesses" and "the interest[s] of justice." 28 U.S.C. § 1404(a). The Fifth Circuit has held that the "determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." Volkswagen I, 371 F.3d at 203 (citing Action Indus., Inc. v. United States Fid. & Guar. Co., 358 F.3d 337, 340 (5th Cir. 2004)). Ordinarily, the plaintiff's choice of venue will not be disturbed unless the balance of factors weighs in favor of the defendant. Indeed, the venue where the plaintiff chooses to file suit is to be "highly esteemed," Manning, 366 F.2d at 698, and "entitled to great weight," especially if "the one he chose is in the district in which he resides." Grey v. Continental Marketing Assoc., Inc., 315 F. Supp. 826, 831 (D.C. Ga. 1970).

The private concerns identified by the Fifth Circuit include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive" Volkswagen I, 371 F.3d at 203 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)). The public concerns to be considered include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." Id. (citing Piper Aircraft, 454 U.S. at 241 n.6, 102 S. Ct. 252).

The first private concern considered is the relative ease of access to sources of proof. Here, Westlake argues that the majority of the sources of proof in this case are located in Dallas,

Texas, because that is where the arbitration took place and the arbitrator resides. While Hancock does not dispute these allegations, it does note that no sources or proof are in Texas. Indeed, as noted above, the main source of proof in this case should be the arbitration agreement itself. Hancock notes that the records in this case are more likely in Mississippi than in Texas as the parties conducted the business of the underlying contract in this district. The Court finds that Westlake has failed to show that the "sources of proof" factor favors transfer.

The second and third private concerns - the availability of compulsory process to secure the attendance of witnesses and the cost of attendance for willing witnesses – both, according to Westlake, favor transfer to the Northern District of Texas. As noted above, Westlake contends that the only key witness relevant to Hancock's claims is the arbitrator who is located in Dallas, Texas. Hancock contends that because the scope of the arbitrator's authority is derived from the underlying agreement, evidence relevant to interpreting that agreement, to the extent there is an ambiguity, will involve negotiating history, correspondence and the like, all of which are either located in Mississippi or took place in Mississippi. According to Hancock, there are no witnesses, documents or other evidence located in Texas. Because the Court must look to the underlying contract to determine the scope of the arbitrator's authority, the Court agrees with Hancock regarding these two witness prongs. The Court finds the availability of compulsory process and the cost of attendance for willing witnesses factors favor the Mississippi forum.

The final private factor to be considered is whether there exists any other practical problems that make trial of a case easy, expeditious and inexpensive. The only argument raised in the pleadings that seemingly implicates this factor is Westlake's contention that by agreeing to arbitrate all disputes under the Consulting and Sales Agreement in Dallas, Texas, Hancock has agreed that the Northern District of Texas is a mutually convenient forum. As noted above, the

Court acknowledges that the Northern District of Texas is an available venue, however, Westlake has failed to prove that it is the most convenient venue.

The Court now turns to the public concerns that are to be considered when deciding a motion to transfer venue under Section 1404(a). The first public concern considered is the administrative difficulty flowing from court congestion. Here, there has been no showing that this factor bears on the issue of transfer.

The second public concern considers the local interest in having localized interests decided at home. Having reviewed the pleadings, the Court finds there are localized interests in having this case decided in Mississippi. Specifically, this case concerns a large local employer whose executive suites are located in Baldwyn, Mississippi. Moreover, as acknowledged by the parties, the underlying contract may have been substantially negotiated in this State, with Westlake representatives coming to Mississippi to implement its suggestions. Accordingly, the Court finds the local interest factor favors maintaining the venue in Mississippi.

The third and fourth public concerns consider the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law, respectively. Here, there has been no showing that Mississippi law should be applied in this case. Indeed, the underlying contract contains a choice of law provision noting that Delaware law controls the interpretation of that agreement. The parties agree that the FAA controls the cause of action to vacate the arbitration award. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) (the FAA applies to actions to confirm or vacate arbitration awards absent clear and unambiguous contractual language to the contrary). Accordingly, the Court finds the familiarity with governing law and the application of foreign law factors neither favor or disfavor transfer.

In sum, the Court finds the private and public concerns relevant to a transfer of venue under 28 U.S.C. § 1404(a) favor venue remaining in this district. Thus, the Court finds Westlake has failed to show good cause for transfer.

3. Motion to Dismiss State Law Claims

Westlake requests that the Court dismiss Hancock's claim pursuant to Mississippi Code Section 11-15-23. Hancock asserts that because this Mississippi statute is identical to the Federal Arbitration Act statute which forms the basis of Count I of their Complaint, there is no additional burden and creates no conflict.

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)). Of course, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible. Lone Star Fund, 594 F.3d at 387 (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

Federal Arbitration Act rules apply absent clear and unambiguous contractual language to the contrary. Mastrobuono, 514 U.S. at 59, 115 S. Ct. 1212; Action Indus., 358 F.3d at 341. In general, the Fifth Circuit permits "arbitration under non-FAA rules if a contract expressly references state arbitration law, or if its arbitration clause specifies with certain exactitude how the FAA rules are to be modified." Action Indus., 358 F.3d at 241. For example, in Gateway Technologies, Inc. v. MCI Telecommunications Corp., 64 F.3d 993, 996 (5th Cir. 1995), the

Fifth Circuit held that a clause stating that "the arbitration decision shall be final and binding on both parties, except that errors of law shall be subject to appeal" evinced the parties' clear intent to depart from the FAA's vacatur standard. In Harris v. Parker Coll. of Chiropractic, 286 F.3d 790, 793 (5th Cir. 2002), the Fifth Circuit found that a contract providing that "the award of the Arbitrator shall be binding on the parties hereto, although each party shall retain his right to appeal any questions of law" demonstrated a similar intent to modify the FAA standard. In Ford v. NYLCare Health Plans of the Gulf Coast, Inc., 141 F.3d 243, 247 (5th Cir. 1998), the Court held that a contract which specifically referenced the "Texas General Arbitration Act" unambiguously expressed the parties' intent to supercede the FAA rules with Texas arbitration law.

In this case, the Agreement fails to expressly reference the Mississippi Arbitration Act, Miss. Code § 11-15-1, *et seq.*, and its arbitration clause does not in any way modify or replace the FAA's rules. Indeed, the underlying contract notes that it is to be construed pursuant to Delaware state law if ambiguities arise. Mississippi law is not contemplated by the clear language of the contract. Hancock notes that the provision of the Mississippi Arbitration Act cited is the same as the FAA cause of action, therefore, there is no harm in letting the claim stand. This statement, however, misconstrues the standard necessary for the Court under Federal Rule of Civil Procedure 12(b)(6). Under that Rule and the attendant case law thereto, the Court hereby dismisses Hancock's second cause of action under the Mississippi Arbitration Act. Regardless of whether the Plaintiff's allegations are true, Hancock has failed to state a legally cognizable claim under the Mississippi Arbitration Act. Accordingly, that claim is DISMISSED.

*Conclusion*

The Court may properly exercise personal jurisdiction over Defendant Westlake as it has sufficient contacts necessary with Mississippi to satisfy due process and traditional notions of fair play and substantial justice. The Court further finds that while the Northern District of Texas, Dallas Division, is an available forum for proper venue, venue is also proper in the Northern District of Mississippi. Westlake failed to show good cause for transfer under either 28 U.S.C. Sections 1404 or 1406. Hancock's claim under the Mississippi Arbitration Act, however, is dismissed. Westlake's Motion to Dismiss [8] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this the 7th day of March, 2013.

　　　　　　　　　　　　　　　　　　　　**/s/ Sharion Aycock**
　　　　　　　　　　　　　　　　　　　　**U.S. DISTRICT JUDGE**