IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

HANCOCK FABRICS, INC.                                                                  PLAINTIFF

V.                      CAUSE NO.: 1:12CV131-SA-DAS

ROWDEC, LLC d/b/a WESTLAKE ASSOCIATES            DEFENDANT

with

ROWDEC LLC                                              PLAINTIFF

V.                      CAUSE NO.: 1:12CV222-SA-DAS

HANCOCK FABRICS, INC.                                             DEFENDANT

MEMORANDUM OPINION

Rowdec, LLC, d/b/a Westlake Associates (Westlake) filed a Motion to Confirm Arbitration Award [34].[1] After Hancock filed its response, and Westlake replied, Hancock requested the opportunity to file a sur-reply [41]. Because the Court has considered all briefing in this matter, the Motion for Leave to File Sur-Reply [41] is GRANTED, and Westlake's Motion to Confirm Arbitration Award [34] is GRANTED, but not to the extent requested.

*Factual and Procedural Background*

Westlake and Hancock Fabrics, Inc. (Hancock) entered into a Consulting and Sales Agreement on February 9, 2009. During the six year term of the contract, Hancock was to pay a guaranteed fee to Westlake the first two years for its consulting services, and thereafter to pay royalties on Hancock's net retail sales of "Identified Products." "Identified Products" were those "covered under this agreement that will be coded by [Hancock] in a mutually agreed upon manner to ensure that [Westlake] is credited with sales attributable to its work under this

---

[1] The Motion to Confirm Arbitration Award is docket [53] is cause number 1:12cv222, while the Motion for Leave to File Sur-Reply is docket [60].

Agreement . . . ." The Agreement further provided a dispute resolution procedure requiring consultation between the parties in the event of a disagreement or dispute arising under the Agreement or parties' performance thereunder. If a resolution could not be met, the Agreement provided that "either party may apply for binding and confidential arbitration of the Disputed Matter with the American Arbitration Association ('AAA')."

During the course of the contract, Westlake and Hancock failed to successfully resolve their differences over the list of "Identified Products" from which Westlake's royalties were to be calculated under the Agreement. In August of 2011, after failed consultations, Westlake applied for binding arbitration to determine whether Hancock breached the Consulting and Sales Agreement by failing to pay royalties on the "Identified Products." The arbitration was conducted over four days, February 6-9, 2012, in Dallas, Texas. The arbitrator issued the award on March 22, 2012, and granted Westlake's declaratory judgment against Hancock. In addition to damages, the arbitrator additionally awarded $519,328.60 to Westlake for its "reasonable and necessary attorney's fees," costs of $4,019.15, and administrative fees and expenses of the American Arbitration Association totaling $25,485.22.

Within hours of the decision being announced, Hancock filed the instant action in the Lee County Circuit Court, which was then removed. Hancock asserted that the arbitrator exceeded his authority by awarding attorneys' fees and future payments based on litigation necessary to confirm the arbitrator's award. Westlake filed a confirmation action in Texas, which was then transferred to the Northern District of Mississippi and consolidated with the instant case. See Rowdec , LLC v. Hancock Fabrics, Inc., Cause No. 1:12cv222 (N.D. Miss. Oct. 18, 2012). The transferred cause of action seeks confirmation of the arbitrator's Award in all respects, including

the imposition of attorneys' fees and costs, as well as post-arbitration fees for successfully responding to an objection to the confirmation of the award as provided in the arbitrator's award.

Westlake now files a Motion to Confirm Arbitration Award in both cases seeking a declaration that the arbitrator had authority to award attorneys' fees and post-arbitration fees, and that the Award required Hancock to pay royalties to Westlake on all Identified Products sold by Hancock in all stores and by internet. Hancock has responded bringing procedural issues as well as substantive arguments to light.

*The Court's Obligation in Reviewing the Arbitration Award*

The FAA provides the means for enforcing arbitral awards by way of a judicial decree confirming, vacating, modifying or correcting an award. See Hall St. Assocs., LLC. v. Mattel, Inc., 552 U.S. 576, 582, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008). Section 9 of the Federal Arbitration Act requires the Court, upon motion of a party, to confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9; see Householder Grp. v. Caughran, 354 F. App'x 848, 850 (5th Cir. 2009) (citing Hall St. Assocs., 552 U.S. at 582, 128 S. Ct. 1396); Schlobohm v. Pepperidge Farm, Inc., 806 F.2d 578, 580 n.2 (5th Cir. 1986). The party moving to vacate the arbitral award bears the burden of proof. See In re Arbitration Between Trans Chem. Ltd. & China Nat'l Mach. Import & Export Corp., 978 F. Supp. 266, 303 (S.D. Tex. 1997), aff'd, 161 F.3d 314 (5th Cir. 1998).

Section 10 of the FAA provides the exclusive grounds for which a Court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); see Householder Group, 354 F. App'x at 850.

Section 11 provides the only grounds for modification of an award:

(a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award.

(b) where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to affect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.

The Court's review of an arbitration award made under the FAA is "extraordinarily narrow" and "exceedingly deferential." Prestige Ford v. Ford Dealer Computer Servs., Inc., 324 F.3d 391, 393 (5th Cir. 2003). The Court must "defer to the arbitrator's decision when possible." Am. Laser Vision, P.A. v. Laser Vision Inst., LLC, 487 F.3d 255, 258 (5th Cir. 2007) (internal quotation marks omitted). See also Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co., 918 F.2d 1215, 1218 (5th Cir. 1990) (court "will defer to the arbitrators' resolution of the dispute whenever possible"). And, as the Supreme Court made clear in Hall Street Associates, vacatur or modification is available only on the limited grounds set forth in Sections 10 and 11. 552 U.S. at 588, 128 S. Ct. 1396. No non-statutory bases exist for vacating or modifying an award, and

parties may not contract to expand judicial review beyond the bases set forth in the statutes. Id., 128 S. Ct. 1396 (reasoning that "[a]ny other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' and bring arbitration theory to grief in post-arbitration process") (citation omitted).

In Anderman/Smith Operating Co., the court observed that where parties have bargained for an arbitration process which would determine the facts and construe disputed contract provisions, there is no injustice in holding them to their bargain. 918 F.2d at 1219 (citing Manville Forest Prod. Corp. v. United Paperworkers Int'l Union, 831 F.2d 72, 74 (5th Cir. 1987)). Consistent with the parties' choice, therefore, it is for the arbitrator, not the court, to decide the merits of the parties' dispute; and it is for the arbitrator, not the court to find the facts and to decide and apply the law. This point was highlighted by the court in Kergosien v. Ocean Energy, Inc., when it stated:

> "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001) (citing United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)). "If 'an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Id. (quoting Misco, 484 U.S. at 38, 108 S. Ct. 364). "[E]ven 'serious error' on the arbitrator's part does not justify overturning his decision, where, . . . he is construing a contract and acting within the scope of his authority." Id. at 510, 121 S. Ct. 1724 (quoting Misco, 484 U.S. at 38, 108 S. Ct. 364). "Established law ordinarily precludes a court from resolving the merits of the parties' dispute on the basis of its own factual determinations, no matter how erroneous the arbitrator's decision." Id. (citing Misco, 484 U.S. at 40, n.10, 108 S. Ct. 364). "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." Id. (quoting Misco, 484 U.S. at 39, 108 S. Ct. 364). "'[C]ourts . . . have no business

weighing the merits of the grievance [or] considering whether there is equity in a particular claim.'" Id. (quoting Misco, 484 U.S. at 37, 108 S. Ct. 364).

390 F.3d 346, 357-58 (5th Cir. 2004), rev'd on other grounds, Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349 (5th Cir. 2009). See also Hamel-Schwulst v. Country Place Mortg. Ltd., 406 F. App'x 906, 914 (5th Cir. 2010) ("[C]ourts do not vacate an arbitration award based on the merits of a party's claim.") (citing Misco, 484 U.S. at 38, 108 S. Ct. 364); Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 401 (5th Cir. 2007) (holding that an award may not be vacated or modified for a mere mistake of fact or law) (citing Brabham v. A.G. Edwards & Sons Inc., 376 F.3d 377, 380 (5th Cir. 2004)).

*Analysis and Discussion*

Westlake seeks by motion to "confirm" that the attorneys' fee awarded by the arbitrator was within his discretion, and that Hancock is obligated to pay royalties on the sale of all Identified Products wherever sold. Pursuant to the standard outlined above, the Court must first determine whether Hancock has carried its burden to vacate the award on the basis that the arbitrator exceeded his authority by awarding attorneys' fees.

I.    Vacation of the Award

Hancock claims that under the terms of the Agreement's dispute resolution procedures, the only "Disputed Matter" between Hancock and Westlake was the parties' "differences over the list of 'Identified Products.'" Under the Agreement, Hancock asserts that the arbitrator was only authorized to resolve the "Disputed Matter," and that in awarding attorney's fees and future attorney's fees, the arbitrator exceeded his powers and issued an award that "goes beyond the subject matter that Westlake submitted to arbitration, namely, 'differences over the list of 'Identified Products.'" Westlake claims that because the arbitration clause was broad, and there is no express limitation on the arbitrator's authority to award attorneys' fees, that award is

6

proper. Moreover, Westlake contends that the AAA Rules, which the parties agreed upon, empower the arbitrator to award attorneys' fees. Finally, Westlake asserts that because both parties requested attorneys' fees, the issue was properly before the arbitrator, and his authority was not exceeded in making such award.

As noted above, the applicable provision in the underlying Agreement provides that the "parties shall attempt in good faith to resolve such Disputed Matter through binding arbitration pursuant to the Commercial Arbitration Rules of the AAA . . . ." The contract defines "Disputed Matter" as "[a]ny dispute, disagreement, claim or controversy between the parties arising under or relating to this Agreement or the parties' performance thereunder . . . ."

The Court finds that the arbitration provision at issue is broad enough to support the imposition of attorneys' fees and contains no limits relevant to the instant dispute. See Timegate Studios, Inc. v. Southpeak Interactive, LLC, 713 F.3d 797, 2013 U.S. App. Lexis 7184, at *15 (5th Cir. Apr. 9, 2013) (noting the broad implication of the arbitration clause where such clause related to "any dispute"). Moreover, the "arbitrator's selection of a particular remedy is given even more deference than his reading of the underlying contract." Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1325 (5th Cir. 1994). "The remedy lies beyond the arbitrator's jurisdiction only if 'there is no rational way to explain the remedy handed down by the arbitrator as a logical means of furthering the aims of the contract.'" Id. (quoting Brotherhood of R.R. Trainmen c. Central of Georgia Ry. Co., 415 F.2d 403, 412 (5th Cir. 1969)). As such, a remedy including attorneys' fees is a rational remedy pursuant to the Agreement providing for "binding and confidential arbitration of the Disputed Matter" which is "[a]ny dispute . . . [or] claim . . . between the parties arising under or relating to this Agreement or the parties performance thereunder . . ."

Aside from the Court's finding that the broad implication of the arbitration clause would permit the arbitrator to award attorneys' fees, the award of attorneys' fees must also be upheld as Hancock sought its own attorneys' fees during the arbitration. As this Court has held, "[t]he arbitrators' authority, however, is limited only by the scope of the agreement between the parties." Wing v. J.C. Bradford & Co., 678 F. Supp. 622, 626 (N.D. Miss. 1987) (citing French v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 784 F.2d 902, 908 (9th Cir. 1986)).

The submissions made by Hancock and Westlake to the arbitrators included cross-claims for attorneys' fees. Thus, it would appear that the arbitrator was "acting within the scope of [his] authority in granting attorneys' fees" to Westlake. Id.; Netknowledge Techs. LLC v. Rapid Transmit Techs., 269 F. App'x 443, 444-45 (5th Cir. 2008) (affirming an arbitral award of attorneys' fees where "both parties requested attorneys' fees while this matter was before the Arbitrator, thereby permitting the Arbitrator to award attorneys' fees under the Rules of the American Arbitration Association.") (citing Commercial Arbitration Rule R-43(d)(ii)). Hancock's Response to Westlake's Arbitration Demand, found in the record as Exhibit D to the Motion to Confirm Arbitration, included a request that "Hancock be awarded reasonable attorneys' fees and costs incurred in defending this action." In the opinion of the Court, Hancock therefore agreed to allow the arbitrator to consider Westlake's claim for attorneys' fees and expenses. Inasmuch as the parties' Demand for Arbitration and Response explicitly empowered the arbitrator to decide the issue of attorneys' fees and expenses, the Court construes the arbitrator's award as having been within the scope of his authority. See United Steel Workers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 585, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). Therefore, Hancock has failed to meet its burden to vacate the arbitral award.

II. Confirmation of the Award

Westlake seeks a "confirmation" that the arbitral award obligates Hancock to pay royalties to Westlake on all "Identified Products" that Hancock sells. Hancock has taken the position that it only owes royalties for all "Identified Products" covered by the Agreement, which Hancock claims limits the payment to royalties on "Identified Products" sold from those stores with craft departments.

A review of the arbitral award shows the pertinent findings of the Arbitrator as to the definition of "Identified Products" as follows:

- "At the time the CSA was signed, Hancock <u>did not</u> have a craft department."

- "The stated purpose of the CSA was for Westlake to consult with and advise Hancock during the Development Period on building a <u>new</u> craft department."

- "The 'work' of Westlake under the CSA was to design and build a craft department for Hancock."

- "Westlake fully performed its duties under the CSA and delivered to Hancock a comprehensive plan, design and installation plan for <u>all</u> products within the craft department." (footnote omitted).

- "Westlake is entitled to royalties based on Hancock's 'Net Retail Sales' as set forth in Schedule 'B' to the CSA."

- "The CSA states in paragraph 3(c) that 'Net Retail Sales' shall mean *actual sales minus returns on products covered by this agreement* that will be coded by the Company [Hancock] in a mutually agreed upon manner to ensure that the Consultant [Westlake] is credited with <u>sales attributable to its work</u> under the Agreement [CSA]

as measured by the Point of Sale (the 'Identified Products'). [inserts and emphasis added by the Arbitrator]."

- "Neither party pled, urged or argued that any portion of the CSA, including the specific language quoted in this Award, was ambiguous. As finding in this case, the language is determined not to be ambiguous."

- "The actual sales minus returns on products covered by the CSA that are subject to payment of the royalty percentages set forth in Schedule B to the CSA means **all products sold in the Hancock craft department** during the six year term of the CSA." (bold emphasis added).

Because Hancock has failed to offer a sufficient basis for vacation or modification of the arbitral award, the Award is hereby confirmed.

*Conclusion*

The imposition of attorneys' fees by the Arbitrator was within his authority. Because FAA § 9's "provision for judicial confirmation carries no hint of flexibility," Hall St., 552 U.S. at 587, 128 S. Ct. 1396, the Award is therefore confirmed. Indeed,

> [o]n application for an order confirming the arbitration award, the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed exceptions applies."

Id., 128 S. Ct. 1396. Thus, because Hancock has failed to prevail in vacating or modifying the award, the award is hereby CONFIRMED. Westlake's request to clarify the definition of "Identified Products" is not well taken. The arbitral award is unambiguous and shall be confirmed.

Westlake additionally requests that the Court impose the post-arbitration fees the Arbitrator warned would be "reasonable" if Westlake "successfully confront[ed] an objection to the confirmation of this Award." Because Hancock did not pose an objection to the confirmation of this Award, but merely challenged the Arbitrator's authority to enter the Award, the Court finds the imposition of those fees is inappropriate.

Therefore, the Court finds against Hancock in their request for a declaratory judgment in Cause Number 1:12cv131. As to cause number 1:12cv222, the Court hereby CONFIRMS the arbitral award, but not to the extent requested by Westlake. Both cases are CLOSED.

SO ORDERED, this the 19th day of November, 2013.

                                               **/s/ Sharion Aycock**
                                               **U.S. DISTRICT JUDGE**