IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

HANCOCK FABRICS, INC.                                                               PLAINTIFF

V.                                                         CAUSE NO.: 1:12CV131-SA-DAS
                                                                                1:12CV222-SA-DAS

ROWDEC, LLC d/b/a WESTLAKE ASSOCIATES                          DEFENDANT

ORDER DENYING MOTION

Defendant has filed a Motion to Enforce Judgment, Motion for Independent Audit, and Motion for Contempt [45] in this closed case. For the reasons cited below, that motion is DENIED:

*Factual and Procedural Background*

Hancock and Westlake entered into a Consulting and Sales Agreement (CSA) in February of 2009 in which Westlake would consult with and advise Hancock on implementing a craft department in its stores. In August of 2011, after failed consultations between the parties, Westlake applied for binding arbitration to determine whether Hancock breached the CSA by failing to pay royalties on the identified products. The arbitration was conducted over four days, February 6-9, 2012, in Dallas, Texas. The arbitrator issued the award on March 22, 2012, and granted Westlake's declaratory judgment against Hancock.

This Court granted in part Westlake's Motion to Confirm Arbitration Award in November of 2013. The Court confirmed that the arbitrator had authority to award attorneys' fees under the arbitration agreement, but refused to hold that the arbitral award obligated Hancock to pay royalties to Westlake on all "Identified Products" that Hancock sells, as opposed to all "Identified Products" Hancock sold within the craft departments of its stores.

*Issue Presented and Relief Requested*

Westlake has now filed a Motion to Enforce Judgment, Motion for Independent Audit, and Motion for Contempt [45]. Westlake contends that the Judgment confirming the arbitral award requires Hancock to submit accurate monthly royalty reports detailing sales of certain product and pay royalties of all Identified Products. According to Westlake, the Monthly Royalty Reports previously provided to Westlake do not accurately reflect Hancock's sales. Westlake contends that for ten of the twelve monthly reporting periods in 2013, Hancock resubmitted 2012 royalty information.

In particular, Westlake's Motion seeks an Order:

1. Appointing an independent auditor at Hancock's expense to audit their books and records from February 2009-February 2015, the contract period;

2. Directing Hancock to pay past and future royalties based on the independent audit and consistent with the Court's judgment;

3. Awarding Westlake prejudgment interest on the amount of past royalties due;

4. Assessing monetary sanctions against Hancock for the costs Westlake incurred in investigating the violation and preparing the motion; and

5. Directing Hancock to show cause as to why they should not be held in civil contempt.

Hancock acknowledges in response that a technical error affected ten out of twelve reporting periods in fiscal year 2013. Hancock contends that it internally developed a "macro," a software shortcut, to cull the sales figures of Identified Products in the craft department and compile them into one list for production to Westlake. The macro was developed in 2012, and as a result, once the fiscal year rolled over into 2013, that program was still culling the data from 2012, without regard to the product sales information being generated in 2013. Hancock

contends it was unaware of the error until the motion, and Westlake had a duty to consult with Hancock regarding the issue prior to bringing the motion to the Court. Hancock asserts that the technical error, which was quickly and easily corrected, caused an overpayment of $22,144.85 to Westlake's benefit. Overall, Hancock contends that this could have been handled between the parties. Hancock additionally states that Westlake was allowed onsite to audit Hancock's books in May of 2012, as their contract provided, but that no other requests for audit have been made by Westlake.

In Reply, Westlake contends that not only did the sales figures for those thousands of products sold in 2012 and 2013 change in Hancock's revised reports, but also the sales figures for products not sold in 2012, but sold in 2013 changed as well. Westlake contends there was no explanation given by Hancock, thus highlighting the fact that an independent auditor is the only way to ensure proper royalty payments. Hancock's sur-rebuttal explained that the revised numbers for products sold in 2013 and not 2012 came from the evolution of its craft departments – adding some and deleting at least one.

Westlake supplemented its motion in late May contending that it sent out an undercover independent contractor to covertly purchase products in a Hancock's craft department to determine if Hancock paid royalties on those items. Of the items purchased, several were not on the Identified Products royalties list on the month during which the products were purchased. Once Hancock was advised of those discrepancies, the items were placed on the list thereafter and Hancock is paying royalties on those items now. Westlake contends that the monthly reports prior to the correction by Hancock are inherently wrong as those products bought were not on the royalties list, although their "shelf tag date" was from, at the latest June of 2013, and at earliest March of 2012. Thus, for at least one product identified by the undercover agent, Hancock had

not been paying royalties on that item for roughly two years prior to admitting royalties were due in 2014.

As a result of those allegations by Westlake, Hancock undertook a comprehensive internal investigation to ensure that sales of products identified in the Arbitration Award were included in the monthly reports. Once certain errors were discovered, the monthly reports were revised, and Hancock reimbursed the difference of $199,513.11 to Westlake. Hancock thereafter retained at its own expense an outside independent auditor to review and audit the commission calculation in their Monthly Reports. The auditor was tasked with the following five objectives:

1. Obtain an understanding of the process that Hancock used to generate the monthly period sales reports and to calculate commissions with appropriate personnel;

2. Review the queries that Hancock used to extract data of monthly craft sales;

3. Through interviews and document analysis, gain an understanding of the following:

    a. stores that have craft departments through the period;
    b. relevant class, sub-class, department, and sub-department; and
    c. relevant SKU numbers;

4. For a sample of periods, observe how Hancock recreated the report queries and reconcile the data in Hancock's commission calculations;

5. Assess Hancock's IT control structure as it relates to ensuring the data integrity of sales in craft stores and SKUs identified in the class, sub-class, department, and sub-department.

After a two day review of Hancock's operation, the auditor confirmed that the query language used in Hancock's extraction process culled the appropriate sales data, including relevant class, sub-class, department, sub-department and SKU numbers such that the "period sales data and commission calculations were correct . . . ." Further, the auditor noted that the general controls of the automated system used by Hancock to extract the data had been "implemented, appropriately tested, and are operating effectively."

Westlake contended on reply that Hancock's continued acknowledgment of errors required the appointment of an independent auditor. Hancock requested to file a Sur-Reply arguing that Westlake failed to raise any legitimate concerns as to the independent auditor's findings.[1]

*Standard and Authority for Appointing Auditor*

As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees. This includes proceedings to enforce the judgment. See Dulce v. Dulce, 233 F.3d 143, 146 (2d Cir. 2000). Without ancillary jurisdiction to enforce judgments, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." Peacock v. Thomas, 516 U.S. 349, 356, 116 S. Ct. 862, 133 L. Ed. 2d 817 (1996) (internal quotations omitted).

Federal Rule of Civil Procedure 70 states:

(a) Party's Failure to Act; Ordering Another to Act.
If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply with in the time specified, the court may order the act to be done at the disobedient party's expense – by another person appointed by the court. When done, the act has the same effect as if done by the party.
     *     *     *
(e) Holding in Contempt. The court may also hold the disobedient party in contempt.

The arbitral award at issue here was confirmed under 9 U.S.C. § 9 of the Federal Arbitration Act. Section 13 of the FAA specifically provides that a confirmed arbitral award "may be enforced as if it had been rendered in an action in the court in which it is entered." See

---

[1] To clarify for possible appellate purposes, the Court has considered the following filings in making this determination, regardless of whether the parties sought and received leave of Court to file them: Motion to Enforce Judgment [45]; Memorandum in Support [46]; Response to Motion [47]; Brief re Motion [48]; Reply to Response to Motion [49]; Exhibits A and B attached to Motion for Leave to File Sur-Reply [50]; Supplement to Motion [54]; Response to Supplement [55]; Reply to Response to Motion [61]; and Exhibit A attached to Motion for Leave to File Sur-Reply [68].

Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp., 220 F.3d 650, 653 (5th Cir. 2000). Thus, this Court has ancillary jurisdiction to enforce confirmed arbitration awards pursuant to Federal Rule of Civil Procedure 70.

*Discussion and Analysis*

Westlake claims that pursuant to the Judgment entered in this case, it is entitled to an <u>accurate</u> monthly report of all royalties it has earned through net retail sales at Hancock's. Hancock contends that it has fully satisfied its obligations under the Judgment, albeit with errors. Hancock thus claims that Westlake cannot demonstrate any non-compliance by Hancock to warrant the Court's enforcement under Rule 70.

The arbitral award ordered Hancock to undertake a number of obligations to ensure that royalties were calculated and paid on a timely basis to Westlake. The Award obligated Hancock to provide an Initial Report and Monthly Reports thereafter with royalty payments due within fifteen days. Technically, there is no evidence that these requirements have not been met by Hancock. The Court is limited under Rule 70 to effectuating final judgment orders. See Analytical Eng'g, Inc. v. Baldwin Filters, Inc., 425 F.3d 443, 451 (2d Cir. 2005). Accordingly, the Court cannot grant new rights or extinguish previous rights held by either party. Id. The Court finds that the final judgment directs Hancock to provide the Monthly Reports and payments within a specified period of time. The Court fails to find any requirement of specific performance or obligation as to Hancock's duty to provide perfectly accurate reports such that enforcement under Rule 70 is necessary. Indeed, the Award contemplates that Westlake would bear the onus of auditing and reviewing the data behind the Monthly Reports to ensure its veracity, as Westlake acknowledged in its Response [61] ("The Award of Arbitrator [] and the

judgment confirming same [] anticipated the potential need for reviewing and verifying the information reported by Hancock to support its royalty payments.").

The Arbitrator noted that "[u]nder the CSA, Westlake has the right to audit the sales reports provided by Hancock in support of its royalty calculation." After the assertion of the right to review, audit, and object to the Initial and Monthly Reports, the Arbitrator held that

> Hancock is ordered to allow Westlake to audit the books and records of Hancock at reasonable times and during normal business hours, limited to the information necessary to determine whether the Initial Report and any Monthly Report is complete, accurate and true as well as to determine whether the Initial Royalty Payment and any Monthly Royalty Payment is accurate and true.

Any auditing or review of those Monthly Reports was within the purview of Westlake.

The CSA entered into and agreed between the parties, as well as the Arbitration Award, contains a provision regarding auditing of the royalties' payment. Schedule B provides:

> The Consultant [Westlake] shall have the right to review, audit and object to the Preliminary Net Sales Report within forty-five (45) days of receiving the Preliminary Net Sales Report; provided, that the Company [Hancock] shall make all records related to such Preliminary Net Sales Report available to the Consultant during such period. To the extent that the Consultant objects to anything contained in the Preliminary Net Sales Report, the Consultant and the Company shall attempt to resolve such objections within ten (10) days of notice by the Consultant of such objections; provided, that if the Consultant and the Company can not solve such objections, the Consultant and the Company shall hire an impartial accounting firm to review the Preliminary Net Sales Report and the Consultant's objections with the Consultant and the Company each paying fifty-percent (50) of such impartial accounting firm's fees; provided, that if the impartial accounting firm determines that one party was correct on substantially all of its positions, the other party shall pay one-hundred percent (100%) of the impartial accounting firm's fees.

There is no evidence of consultation between the parties prior to bringing this motion. There is also no evidence or mention of Westlake requesting a review or audit to Hancock within the time frame provided in the CSA. It seems to the Court that in its fury for judicial intervention (despite the parties' agreement to arbitrate all disputes), Westlake has jumped over

the requirements of the mutually agreed upon contractual provisions and seeks to set new parameters for the review – including Hancock bearing the full cost of an independent audit. The CSA contemplates a more reasonable fee structure in which Westlake would bear the obligation of bringing the accounting issues to light timely and with due haste, as opposed to waiting several months to confront Hancock. Here, Westlake seeks the extraordinary judicial action despite the safeguards in the original contract. In order to preserve their rights under the CSA, Westlake should have sought the remedies offered under the CSA timely instead of running to the courthouse seeking such extraordinary relief.

The Court finds further comfort that judicial intervention is not necessary based on Hancock's execution of an independent audit and provision of the report to all parties on the commission calculations. Westlake's inability to find fault with that audit or challenge the findings of the report are telling as well.

The Court finds that the appropriate action in this case is to follow the contract agreed to by the parties. Therefore, the Court finds that a Court-ordered independent audit is not necessary as the CSA provides for a sufficient accounting and audit procedure in the event of dispute. Accordingly, Westlake's Motion to Enforce Judgment, Motion for Independent Audit, and Motion for Contempt [45] is DENIED.

SO ORDERED, this the 23rd day of September, 2014.

                                                /s/ Sharion Aycock  
                                                **U.S. DISTRICT JUDGE**